IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SAMUEL D. FLOYD, JR., ) | Civil Action No. 3:12-987-MGL-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is a Social Security case filed by the Plaintiff, pro se,[2] on April 10, 2012. This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on May 10, 2007 and protectively filed an application for SSI on April 23, 2007. Tr. 121-123, 129-131. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 13, 2010, at which Plaintiff and a vocational expert ("VE") appeared and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2] Plaintiff was represented by counsel at the hearing before the Administrative Law Judge and during the Appeals Council process.

testified. The ALJ issued a decision on April 23, 2010, finding Plaintiff was not disabled because he did not have a "severe" impairment or combination of impairments.

Plaintiff was fifty-five years old at the time of the ALJ's decision. He has a high school education and past work experience as a saw operator. Tr. 121, 143, 147, 193. Plaintiff alleges that he became disabled on January 6, 2007 due to mini strokes, seizures, diabetes, high cholesterol, left-sided weakness, hypothyroidism, and vision loss. Tr. 70.

The ALJ found (Tr. 21-25):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 6, 2007, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following medically determinable impairments: history of non-epileptic "spells," possible conversion disorder, cervical and lumbar disc disease, diabetes, history of carpal tunnel syndrome and release surgeries, history of rotator cuff injury and surgical repair, thyroid disease, overactive bladder, enlarged prostate and decreased vision (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 and 416.921).

5. The claimant has not been under a disability, as defined in the Social Security Act, from January 6, 2007, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

On February 13, 2011, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

2

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## **MEDICAL EVIDENCE**

Plaintiff underwent two surgeries for carpal tunnel syndrome, one in 1994 and the other in 1997. Tr. 436-438, 453-461. Plaintiff reported to Dr. F. Edward Huskey, Jr., an optometrist, that he suffered severe vision loss in his left eye as a result of time spent in an oxygen tent as a young child. In a letter dated March 29, 2010, Dr. Huskey wrote that he examined Plaintiff in February 1998, August 2003, and January 2006. Dr. Huskey noted that in January 2006, Plaintiff had corrected vision of 20/25-1/16 in his right eye and 20/400- in his left eye. He also noted that Plaintiff had amblyopia[3] and was legally blind in his left eye. Tr. 731.

---

[3]Amblyopia is "impairment of vision due to abnormal development, without detectable organic lesion of the eye." Dorland's Illustrated Medical Dictionary, 57 (32nd ed. 2012).

3

Dr. William Bearley diagnosed Plaintiff with diabetes in March 2006. Tr. 473. The record indicates that Plaintiff's blood sugar level fluctuated throughout 2007 and much of 2008. Tr. 278, 387, 388, 473. Plaintiff reported improvement with his blood sugars in November 2008. Tr. 388.

Plaintiff provided that he was diagnosed by Dr. Michael J. Stotzer with an enlarged prostate in October 2007 after complaints of frequent urination. Tr. 164. He reported that his symptoms improved with medication. See Tr. 347, 377-378.

On January 6, 2007, Plaintiff was treated at Lexington Medical Center for complaints of left-sided weakness and numbness, involving his face, arm, and leg. He was subsequently admitted for evaluation for a possible stroke. It was noted Plaintiff appeared off balance and had some reduced strength on his left side. Cervical and lumbar spine x-rays revealed some mild degenerative changes in Plaintiff's lower back and some mild arthritis in his neck, an MRI of the brain was normal, a carotid Doppler study was normal with no evidence of stenoses, and an echocardiogram was normal. Dr. Stephen Watkins opined in a discharge summary that Plaintiff probably suffered from a conversion-type reaction or some type of diabetic neuropathic symptom. Tr. 217-227.

Plaintiff was referred to Dr. Theodore Faber regarding his neuropathic symptoms. Physical examination revealed no neurological defects other than diminished reflexes throughout. Dr. Faber diagnosed left-sided paresthesias and weakness and mid-back pain of uncertain etiology. He suggested that Plaintiff might have a cervical or thoracic myelopathy which could account for some of his symptoms. Tr. 232-233. The record reflects that Plaintiff continued to experience numbness spells, but continued to have consistently normal test results and objective medical findings. Tr. 262, 265-270, 469, 481.

Dr. Faber referred Plaintiff to Dr. David E. Stickler at the Medical University of South Carolina ("MUSC") for a second opinion concerning Plaintiff's possible recurrent transient ischemic attacks ("TIAs"). Dr. Stickler opined in March 2007 that it was unlikely that Plaintiff was suffering from TIAs given the "stereotypical events that occur almost on a daily basis." Dr. Stickler scheduled Plaintiff for an electroencephalography ("EEG") to evaluate possible non-epileptic seizures. Tr. 282-284. On June 11, 2007, Dr. Mark Wagner (a clinical neuropsychologist) evaluated Plaintiff. His impressions were non-epileptic seizures, psychologic profile consistent with conversion disorder, and no evidence of feigning. Tr. 285-287. Inpatient video EEG monitoring, conducted from June 18 to 20, 2007, was noted to be normal and revealed no evidence of epilepsy. Four "spells" in which Plaintiff had trembling of his head and twitching of his muscles of the left face lasting about ten to twenty seconds were noted. Plaintiff responded to prompting by nodding his head during these spells. Tr. 650. Dr. David Bachman of MUSC opined in a discharge summary dated June 21, 2007, that Plaintiff might be suffering from an anxiety disorder, and that hyperventilation could be the cause of Plaintiff's symptoms. He suggested that Plaintiff seek psychiatric help for a possible anxiety disorder and refrain from working with hazardous equipment until a more specific diagnosis and treatment were determined. Tr. 292-294.

On August 17, 2007, Dr. A. Nicholas DePace, a psychologist, conducted a consultative examination of Plaintiff. Plaintiff reported that he stopped working with his company in January 2007, after he reported he had a "mini-stroke." He stated that he was on short-term disability until July 2007 and was terminated after that. Dr. DePace diagnosed Plaintiff with a conversion disorder. Dr. DePace noted that he was able to prevent Plaintiff from succumbing to an oncoming spell, by simply redirecting Plaintiff's attention. Dr. DePace also commented that, despite reporting spells

5

recurring three times a day, Plaintiff did not appear to be in significant distress or disturbed by his condition. Tr. 315-320.

On August 23, 2007, and again on February 20, 2008, non-examining reviewing state agency psychologists and physicians concluded, based on Plaintiff's medical records to date, that none of his alleged impairments were severe. Tr. 321-322, 368-369.

Despite Plaintiff's reports of ongoing spells, consisting primarily of left-side numbness, he continued to have normal test results, including CT scans and MRIs of his brain, throughout 2007 and 2008. Tr. 422-427, 431, 476, 479, 485, 486. Emergency department notes from February 2009 generally reflected the same findings as earlier testing. Tr. 412-422. There is no evidence in the record that Plaintiff sought a mental health evaluation or care for a possible conversion disorder.

In January and February of 2008, Plaintiff had two MRIs of his lower back and Dr. Brett C. Gunter of Columbia Neurosurgical Associates diagnosed Plaintiff with early degenerative disc disease without any evidence of nerve root compression. Tr. 366, 375, 434, 488. An MRI on January 9, 2008, indicated central disc protrusion contributing to central canal stenosis at L4-5. Because Plaintiff continued to complain of left-sided tenderness and weakness, he was referred for an MRI of his neck. On March 14, 2008, the MRI revealed a broad-based disc protrusion at C6-7 which compressed the thecal sac and slightly flattened the posterior cord, and an earlier smaller bulge at C5-6. Tr. 505, 432. Dr. Gunter referred Plaintiff to a pain management specialist for epidural steroid injections and physical therapy to treat Plaintiff's reported neck, shoulder, arm, back, hip, and leg pain. Tr. 366, 367. Dr. Gunter noted that if pain management and physical therapy were unsuccessful, Plaintiff was to return to him to discuss a surgical alternative. Tr. 367. Treatment notes from the Carolina Spine Center indicate that Plaintiff received three to four weeks of relief from an epidural

injection in his lower back in May 2008. Although Plaintiff walked with a cane at his appointment, examination revealed that Plaintiff had full motor strength and a normal gait. Tr. 507, 714-719. On July 2, 2008, Plaintiff was advised to lose weight, pain medication was prescribed, and he was referred for a second epidural injection. Tr. 507, see 724. The record does not contain any evidence that Plaintiff subsequently sought treatment for back or neck pain during the pertinent time period.

Testing done to address the etiology of Plaintiff's "spells" revealed that Plaintiff had very mild thyromegaly. See Tr. 272, 480. In November 2007, after an initial period of medication adjustment, Plaintiff reported that his energy level was good. Tr. 325-326, 327-328, 332, 334-335. The record does not contain any evidence of subsequent issues related to Plaintiff's thyroid.

## **HEARING TESTIMONY**

Plaintiff testified at the hearing that he was unable to work due to spells lasting three to four minutes to an hour involving left-sided weakness and pain and dizziness, which he allegedly experienced three times a week. Tr. 38. He also reported continuing problems with the grip strength in his left hand related to his carpal tunnel surgeries. Tr. 39-41, 47. Plaintiff testified that he had an enlarged prostate which at times was "real painful." Tr. 41. He indicated that he had experienced difficulties getting his blood sugar under control, but testified he started a new insulin regime several months previous and did not identify any specific limitations or problems imposed by his diabetes. Tr. 41-42. Plaintiff also testified to pain related to some herniated discs in his back that he experienced frequently and required him to lie down or stand for five to ten minutes in order to gain relief. Tr. 49-50. He admitted he was able to drive, he drove his grandchildren to the bus stop, and he drove to the grocery store. Tr. 42-43. Plaintiff also reported that he could bathe himself, dress himself unaided, and fix small meals. Tr. 43. Due to his various alleged impairments, Plaintiff

reported that he spent approximately a quarter of the day in bed; was limited to standing, sitting, or walking for fifteen to twenty minutes at a time; and could lift no more than fifteen pounds. Tr. 44-47.

Plaintiff's daughter also testified at the hearing. She stated that although her father had his driver's license, he did not drive very much. She also testified that her father often looked like he was in pain and used a cane almost all the time. Tr. 53-54.

## **DISCUSSION**

In his complaint, Plaintiff appears to allege that he is disabled because he was diagnosed with a stroke, seizure symptoms, and left-sided numbness (which he claims was later discovered to be neuropathy from diabetes). Plaintiff states he was later diagnosed with fibromyalgia. He asserts that despite his being deemed legally blind, his appeal was denied. In his Complaint, Plaintiff asks the Court to review all the facts in the case including that he worked for his last employer for thirty-four years before his health conditions made it so he could not work anymore. Complaint at 3-5. In his Brief, Plaintiff alleges that he is unable to work due to several different conditions which have "grown" since he first stopped working. These alleged conditions include mini strokes, seizures, diabetes, diabetic neuropathy in his legs, fibromyalgia, thyroid problems, carpal tunnel syndrome, an enlarged prostate, weakness on his left side, high cholesterol, herniated discs in his back, vision loss (legally blind in his left eye), and the need to use a C-Pap machine at night for breathing. Plaintiff argues that he was incorrectly denied disability benefits in 2007 and 2010 based on a determination that these conditions would not prevent him for working for twelve continuous months, where he continued to have these conditions and still had them in 2012. Plaintiff also appears to

8

argue that he should be found disabled because the ALJ asked the VE[4] if he would be able to find another job with his conditions, to which the VE replied "no." Additionally, Plaintiff states that since the hearing before the ALJ, he was deemed disabled by the food stamp office in Lexington, South Carolina.[5]

The Commissioner contends that substantial evidence[6] supports the ALJ's conclusion that Plaintiff did not have a "severe impairment." Specifically, the Commissioner argues that Plaintiff did not prove that his periodic spells or other conditions significantly limited his ability to perform basic work activities.

A.      Severe Impairment(s)

Plaintiff appears to allege that the ALJ should have found that he had severe impairment(s) at Step 2 of the sequential evaluation process.[7] The Commissioner contends that

---

[4]Although Plaintiff refers in his Brief to the "vocational rehabilitation representative," it appears that he is referring to the VE and the VE's testimony at the hearing before the ALJ. See Plaintiff's Brief at 1.

[5]The record contains no evidence of an award of benefits by another agency or that Plaintiff made this argument while the case was before the ALJ or Appeals Council.

[6]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[7]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed
(continued...)

9

Plaintiff did not prove that his impairments significantly limited his ability to perform basic work activities and that the ALJ specifically identified a number of reasonable grounds for his step two findings including Plaintiff's activities of daily living, the lack of objective medical evidence identifying a physiological cause for Plaintiff's spells, Plaintiff's failure to seek mental health treatment to address his spells despite the diagnosis of a possible conversion disorder and corresponding recommendations of his treating physicians, the effective medical treatment of many of Plaintiff's conditions, the failure of Plaintiff's physicians to impose any significant functional limitations, Plaintiff's ability to work in the past with the same conditions including his vision problem, and the concurrence of the opinions of the state agency medical consultants.

It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:

> the abilities and aptitudes necessary to do most jobs. Examples of these include --
>     (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>     (2) Capacities for seeing, hearing, and speaking;
>     (3) Understanding, carrying out, and remembering simple instructions;
>     (4) Use of judgment;
>     (5) Responding appropriately to supervision, co-workers and usual work situations; and
>     (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to

---

[7](...continued)
impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)

The ALJ's determination that Plaintiff did not have a severe impairment or combination of impairments is supported by substantial evidence including Plaintiff's activities of daily living, the lack of objective medical evidence identifying a physiological cause for his "spells," his failure to seek mental heath treatment, the effective medical treatment of many of his conditions, his physicians' failure to impose any significant functional limitations, and the concurrence of the opinions of the state agency medical consultants.

Plaintiff's reported activities of daily living provide substantial support for the ALJ's determination. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)(daily activities including washing dishes, grocery shopping, and taking care of personal needs supported ALJ's determination that claimant had no severe impairment). Since he ceased working, Plaintiff continued to care for his grandchildren and pets; handled financial matters; performed household chores; drove at least short distances; went shopping; regularly attended church; and occasionally went fishing with friends. See Tr. 24, 153-160, 173-180, 315-316.

The ALJ's determination that Plaintiff's "spells" causing numbness and pain on the left side of his body did not constitute a severe impairment is supported by substantial evidence including that Plaintiff's treating physicians concluded that there was no physiological basis for the spells. See Tr. 22, 294, 650. Objective medical evidence, including normal findings on x-rays, MRIs, CT scans, carotid Doppler study, echocardiogram, and EEG (Tr. 221, 223-227, 262, 481, 650) also supports the ALJ's findings. Also, Dr. Pace was able to avert one of Plaintiff's spells simply by redirecting Plaintiff's attention.

Additionally, the ALJ reasonably found that Plaintiff's spells were not severe because Plaintiff failed to follow the advice of his treating physician to seek mental health treatment to address the potential conversion disorder which was thought to be the cause of his spells and because of the inconsistency between his level of treatment and claims of disabling symptoms. See Tr. 22, 24, 286-287, 294. In Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), the Fourth Circuit found that the ALJ did not err by considering the inconsistency between claimant's level of treatment and her claims of disabling pain. Id. at 930. A failure to follow prescribed treatment may bring the claimant's motivation into question and may support a decision to deny benefits. English v. Shalala, 10 F.3d 1080, 1083-1084 (4th Cir. 1993); see also Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled...").

The ALJ's determination that a number of Plaintiff's other conditions were not severe impairments where they were effectively treated is also supported by substantial evidence. An ALJ must consider the effectiveness of the claimant's treatment, including medications, in evaluating his or her claimed symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). Here, Plaintiff's back and neck pain were managed by medication, including epidural steroid injections. See Tr. 367, 507, 714-719, 724. His thyroid issues and urinary frequency were effectively managed with medication. Tr. 332, 347, 377-378. Although Plaintiff reported periods of high blood sugars, he later reported improvement with treatment. See Tr. 387, 388. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Although Plaintiff had a visual impairment, his corrected vision allowed him to maintain a valid driver's license. There is no indication that this condition significantly worsened at the time

12

of his alleged onset of disability and he worked for many years despite this impairment. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)(claimant who worked with impairments over a period of years without any worsening of condition was not entitled to disability benefits); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)(finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration).

The findings of the ALJ are also supported by Plaintiff's failure to produce any evidence that a physician or psychologist imposed any functional limitations corresponding to basic work activities. The only limitation placed on Plaintiff by his treating and examining physicians was that he not work with hazardous equipment until a more specific diagnosis and treatment for his spells was determined. Tr. 294. Such a restriction does not have a significant effect on work that exists at all exertional levels. See SSR 85-15 ("A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels.").

The findings of the reviewing state agency physicians and psychologists also support the ALJ's findings at step two. See 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). Here, the State consultants all found that Plaintiff's impairments were non-severe.

Plaintiff also appears to argue that the ALJ should have found that he had severe impairment(s) based on his long work history. The Commissioner contends that work history is only

one factor of the many an ALJ considers in rendering a decision and that the ALJ here set forth specific, substantial evidence supporting his finding of disability.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. The ALJ specifically found that Plaintiff had a medically determinable impairment which was capable of producing some of Plaintiff's alleged symptoms of dizzy spells, episodes of left-sided weakness and lack of awareness, back pain, decreased grip strength on the left, poor vision, pain due to prostate problems, and headaches. The ALJ then properly considered the medical and non-medical evidence in determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. The ALJ specifically found this based on Plaintiff's activities of daily living which

included taking kids from the church fishing and camping; going to church approximately three times a week; serving as the head usher for the church; mopping, sweeping, taking out the trash, and taking out the dog; keeping a checking account and managing his own money; providing care (with his wife) for two grandchildren who lived with Plaintiff and his wife; and driving an automobile. The ALJ also found that Plaintiff was not fully credible because there was no physiological basis for his "spells" and that he had no mental health treatment for possible conversion disorder. Additionally, the ALJ also noted the effectiveness of Plaintiff's medications in controlling his various conditions without report of significant side-effects. Tr. 23-24. Additionally, as discussed above, the medical evidence supports the ALJ's decision.

B.     New or Additional Evidence

Plaintiff appears to argue that this Court should remand his case to the Commissioner or award benefits because he continued to be treated for his impairments (showing that these impairments lasted for a period of at least twelve months), and he was later diagnosed as having additional impairments (including fibromyalgia and the use of a C-Pap machine).

"Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see also 42 U.S.C. § 405(g). The information discussed by Plaintiff is not part of the administrative record. Thus, the Commissioner's decision should not be reversed based on information discussed by Plaintiff in his Complaint and/or Brief as this is not part of the administrative record.[8]

---

[8]Additionally, although Plaintiff has made assertions concerning later medical treatment, he has not presented any medical records or other evidence of such.

15

Additionally, Plaintiff fails to show that this action should be remanded to consider new evidence. Additional evidence must meet four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence. These prerequisites are as follows:

1. The evidence must be **relevant** to the determination of disability at the time the application was first filed and not merely cumulative.

2. The evidence must be **material** to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.

3. There must be **good cause** for the claimant's failure to submit the evidence.

4. The claimant must present to the remanding court at least a **general showing** of the nature of the new evidence.

See Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985).[9] A claimant must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983).

Here, Plaintiff has not made a general showing of the nature of the new evidence, as he has not presented any additional medical or other records, but only made assertions concerning his

---

[9] The court in Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir.1991), rev'd on other grounds, 953 F.2d 93 (en banc), suggested that the more stringent Borders four-part inquiry is superceded by the standard in 42 U.S.C. 405(g). Id. at 774; see Wilkins, 953 F.2d at 96 n. 3. The standard in 42 U.S.C. § 405(g) allows for remand where "there is new evidence which is material and ... there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that the Borders construction of 42 U.S.C. § 405(g) is incorrect. See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6 (1990). Thus, the more stringent Borders test should be applied. Even if the less stringent test is applied, Plaintiff fails to show that this case should be remanded because he fails to show that the new evidence is "material" or that there was "good cause" for the failure to incorporate it into the record.

16

condition. It is unclear that the new evidence relates to the relevant time period (and appears that much of it was well after the ALJ's decision). If the referred to evidence shows a deterioration in Plaintiff's condition after the ALJ's decision, it would not be a basis for remand, although it might be grounds for a new application for benefits. See Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits."); see also Godsey v. Bowen, 832 F.2d 443, 445 (7th Cir. 1987); Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 512 (9th Cir. 1987).

    C.    VE

Plaintiff also appears to alleged that he should have been found disabled based on the testimony of the VE at the hearing before the ALJ. The Commissioner notes that it is unnecessary to discuss the testimony of the VE because substantial evidence supports the ALJ's decision that a significant portion of Plaintiff's subjective statements were not credible and the VE provided testimony concerning jobs available if Plaintiff's subjective statements concerning his symptoms were accepted as credible. At the hearing, the ALJ asked the VE a hypothetical question concerning a claimant of Plaintiff's age, education, past relevant work experience with the same impairments as Plaintiff including late effects of cerebral vascular accident (a stroke), continuing stroke-like symptoms, insulin-dependent diabetes, enlarged prostate or prostatitis, degenerative disc disease in the lower back, bilateral carpel tunnel syndrome for which he has received surgeries and had continuing problems, and a residual functional capacity based on Plaintiff's testimony if the testimony was considered fully credible. In response to the ALJ's question of whether there were any jobs that such a claimant could perform, the VE stated that there were not any jobs that such a claimant could

perform because of the alleged inability to use either hand, the dizzy spells, and the frequency of such. Tr. 55-56.

Here, the ALJ was not required to accept the VE's testimony because the ALJ found that Plaintiff was disabled at step two of the sequential evaluation process. A VE is not used to determine whether a claimant is disabled at step two of the process. Even at step five of the process, in order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ was not required to accept the VE's testimony because it included limitations which the ALJ did not find to be credible and/or supported by the record. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record."); Chrupcala, supra.

## **CONCLUSION**

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **AFFIRMED**.

Joseph R. McCrorey
United States Magistrate Judge

March 22, 2013
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

18

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).